The opinion of the court was delivered by
Manning, C. J.
This suit is instituted against Lanier, and the sureties on his bond as tax-collector for the parish of Carroll, to recover a balance of seventeen thousand five hundred and thirty-four 54-100 dollars, alleged to be due for taxes of 1875 and 1876, collected and not accounted for, with two per centum per month interest from December 20, 1876.
The defence is, that Lanier owed the State a balance of only about fifteen thousand dollars for the quarter ending December 31,1876, the settlement of which, it is admitted, should have been made on Dec. 20,1876, but owing to great difficulty in completing his collections, the tax collector procured from the Auditor of Public Accounts an extension of time to make his final settlement, “ which extension was granted *424 toy the Auditor until January 10,1877,” at which time he came to New ■Orleans prepared to make it — that he found the city in-great excitement, •and two rival State governments installed, each claiming to be the legitimate government, one of which, styled by him ‘the Packard government,’ held the State House, in which were the Auditor’s and Treasurer’s offices and the government archives, while the other occupied 'Odd Fellows’ Hall, without any of the archives, and without a State Treasurer — that Allen Jumel qualified as Auditor under ‘ the Nicholls government’ about January 8, 1877, but in fact was not inducted into office then, and obtained possession of the office and of its books and archives only in April following, and that in the meantime one Johnson was the Auditor — that Lanier was in great doubt what to do with the public funds in his hands under these circumstances, but that he finally prevailed upon Johnson to permit him to make his settlement, and pay over the funds to A. Dubuclet, the State Treasurer, and as he was about to do this, he was injoined and prohibited from making the settlement with Johnson or payment to the Treasurer by a writ, issuing from the Fourth Court of New Orleans at the instance of Attorney General Ogden, and which was served on him on January 19,1877, and that he thus became the forced custodian of the funds in his hands, and a depositary of the same without reward — that about January 25 of same year, Lanier shipped twelve thousand dollars in U. S. currency by steamer Pargoud to Lake Providence in Carroll parish, where he resides, and also went there carrying with him the residue of the funds, and he thus transported the money because he was fearful it might be seized by one of the rival governments, if it should be left in New Orleans— that he remained in Carroll parish until about May 1st., when he started to New Orleans, funds in hand, for the purpose of making his final settlement with the only surviving government, and at Jackson. Miss., took passage in a sleeping-car, and went to bed with his vest on, in the inside pocket of which was the package containing the funds of the State, and during the night was robbed of the same — that on awaking in the morning, his vest had been cut in two large places immediately over the inside pocket, and the package was gone, whereupon he gave notice to the train conductor of the robbery, and asked that the train be stopped, or that a search be made for the money, which the conductor refused to do, and on arriving at New Orleans he informed the superintendent of the railroad of the robbery, and went to the Central Police Station and communicated the facts, and also informed the Attorney General and the Auditor thereof, and that, having used due diligence and care and prudence in keeping the money, he is not responsible for its loss.
The testimony of the defendant Lanier recites the occurrences in *425 the order, and to the effect, set forth in the answer, and is corroborated to this extent by W. L. McMillen. He was a passenger in the same car with Lanier, who told him he had about thirteen thousand dollars, and was on his way to New Orleans to make his settlement, and he showed the witness a package which Lanier said contained the money, and which had the appearance of such a package. On going to bed, Lanier said to the witness he would keep his vest on, and on the following morning while witness was in the wash-room, Lanier came in exclaiming that he had been robbed, and exhibited his vest which was cut in two slits transversely over the pocket. Lanier was pallid, and looked disturbed, and seemed to realize the magnitude of the disaster. The application to the conductor of the car, and the notification of the police, are proved, and this witness states that at some time during the night, after leaving Jackson and before reaching Kenner, the conductor and the porter of the car were both asleep, leaving no one on watch.
There was other testimony which we do not deem it essential to recite. The case was tried by a jury, whose verdict was for the defendants.
The verdict is manifestly wrong. The suit is for over seventeen thousand five hundred dollars, and the certified transcript from the Auditor’s books shews the sum due to be the sum sued for. No attempt whatever was made on the trial to account for the difference between the sum alleged to have been stolen, and the sum due as shewn by the Auditor’s books. Lanier alleges in the opening of his answer that he really owed only about $15,000.00, and the argument of his counsel seeks only to account for that sum, which they do by assuming as proved that $13,800.00 was in the package, and $1,200.00 was in warrants which Lanier had received in payment of taxes. Grant everything that is thus claimed or proved, and there is a residue of $2,535.54 wholly unaccounted for.
The receipt of the steamer Pargoud shews that a package was sent as alleged, which was said to contain $12,000.00, and Mr. McMillen does not speak of the contents of the package, alleged to have been stolen, from personal knowledge, but only from the declarations of Lanier. No one swears to the contents of the package except Lanier. But assume the robbery proved.
It is contended that Lanier was the forced custodian of the funds of the State on and after January 19, 1877, the date of the sorvice of the injunction upon him. The fact seems to be lost sight of on both sides, that he was a defaulter on and after December 20,1876. The right of the State to her funds, collected by her tax-gatherer, was complete on that day, and his responsibility for the whole sum, appearing to be due by the Auditor’s books, attached then, subject of course to *426 legal proof of having accounted for any part thereof, or of legal excuse for not accounting for any part, such as the exhibition of delinquent list, etc. It is gravely alleged in the answer, and as gravely argued, that the Auditor extended the time of settlement to January 10 following. From what source did the Auditor derive his authority to suspend the laws of the State? What law confers upon the Auditor the power to alter the provision of a statute touching the duty of a tax collector, and imposing penalties for its non-performance? Was it ever heard of, until within the last decade, that a civil officer of a State issued orders touching the conduqt of other civil officers,.whose duties were already-prescribed by law, and directed them to do, or excused them for not doing, an act after the fashion of military commanders ? The present Auditor did not publish the list of Delinquents last year at the time required by law because of the prevalence of the yellow fever, but so far from supposing that he could defer the performance of that duty at his pleasure, much less excuse others from performing theirs, he reported his non-action to the legislature, and that body passed a bill of relief in the shape of a resolution approving his course. Sess. Acts 1879, p. 34. The order or permission of the Auditor to a tax collector to refrain from doing what the law commands him to do by a given day, is nothing worth. Lanier was a defaulter on Dec. 20, 1876. No action of the Attorney General, a month afterwards, could make him a forced custodian of funds, for which his responsibility, and that of bis sureties, had already attached by express mandate of law. '
Leaving out of view this aspect of the question, and considering the liability of the defendants as dependent upon the use by Lanier of ordinary care and diligence, the case is against them. The evidence is, that the banks in New Orleans were receiving deposites, and transacting business in January 1877 as usual. There were numerous places where Lanier might have kept his funds safe. In April or May following when he was coming to New Orleans, the evidence shews that he could have obtained from the bank at Vicksburg bills on New Orleans. He chose to run the risk of keeping on his person funds for which the law made him and his sureties liable. But there is no pretence that the stolen •package contained more than $13,800.00, and beyond an amount of warrants, which Lanier says were for $1,500.00, and liis counsel says were $1,200.00 and which were not stolen, there is no attempt made to account for the ivsi lue,and it must be remembered that of all the persons whom Lanier tol 1 of his possession of this money, and to some of whom he shewed a package, which he said contained money, not one speaks of its contents from personal knowledge or inspection, or in any other way than that Lanier told them it contained money, and they do not agree in the sum it was said to contain.
*427 P. F. Kendall is surety on the tax collector’s bond for sixteen thousand dollars, and Jules P. Lewis for four thousand dollars.
It is ordered, adjudged, and decreed that the verdict of the jury is set aside, and the judgment of the lower court thereon is avoided and reversed, and it is now decreed that the State of Louisiana have and recover of Benjami.n H. Lanier, the sum of seventeen thousand five hundred and thirty-four dollars and fifty four cents with interest at two per centum per month from December 20,1876 until paid, and that the State of Louisiana have and recover of Peter F. Kendall the sum of sixteen thousand dollars, and of Jules P. Lewis the sum of four thousand dollars, this judgment as between the mand Lanier to be in solido with him, and to be held satisfied by the payment by one or either or all of them of the full amount of the ju Igmcnt against Lanier, and that the State further have and recover of the defendants the costs of both courts.